```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                      EASTERN DIVISION

Cathy A. Ray,                   :

        Plaintiff,              :

    v.                          :    Case No.  2:14-cv-1362

                                :    JUDGE MICHAEL H. WATSON
Commissioner of Social Security,     Magistrate Judge Kemp

        Defendant.              :
```

REPORT AND RECOMMENDATION

I.  Introduction

Plaintiff, Cathy A. Ray, filed this action seeking review of a decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income.  Those applications were filed on June 9, 2011, and alleged that Plaintiff became disabled on June 22, 2010.

After initial administrative denials of her claim, Plaintiff was given a hearing before an Administrative Law Judge on January 31, 2013.  In a decision dated February 8, 2013, the ALJ denied benefits.  That became the Commissioner's final decision on June 25, 2014, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on November 6, 2014.  Plaintiff filed her statement of specific errors on December 22, 2014, to which the Commissioner responded on January 26, 2015.  No reply brief was filed, and the case is now ready to decide.

II.  Plaintiff's Testimony at the Administrative Hearing

Plaintiff, who was 52 years old at the time of the administrative hearing and who has her GED, testified as follows.  Her testimony appears at pages 29-42 and 43-45 of the administrative record.

The ALJ first asked Plaintiff if she ever cleaned houses. She said she had done so five or ten years previously, and occasionally since then.  The ALJ was concerned that her occupation was still listed as housecleaner even during her most recent medical treatment.

Plaintiff then testified that she had problems with her wrists and also had arthritis in her fingers.  She lived with an aunt who did all the housework.  She could walk through a grocery store but did not walk daily (although her medical records apparently said that she did).  She had been prescribed medication for fibromyalgia but could not afford it.  She had also been prescribed medication for back pain.  When she was taking medication, she noticed no difference in her condition. She left her last job, which involved boxing and tagging merchandise, because she could no longer do the work.

In a typical day, Plaintiff would sit for two or more hours after waking up before she could walk about.  Other than sitting and watching an uncle who had Alzheimer's disease, she sat in her room.  On days where her symptoms were especially severe, she could barely breathe.  Sudden movements, bending, or turning her head made her symptoms worse.  She could not lift her arms without pain.  She completed a vocational rehabilitation program but could not work for eight hours doing secretarial duties.  She had to alternate constantly between sitting and standing.

Finally, Plaintiff said she had been a greeter at Meijer's and also worked in loss prevention.  The latter job might involve struggling with suspected shoplifters.  She had also been a salesperson and an administrative secretary, and worked for Meijer's for about eight years in total.

### III. The Medical Records

The medical records in this case are found beginning on page 190 of the administrative record.  The pertinent records can be

summarized as follows.

The first of the five medical records in the file is an emergency room note from May 5, 2010. At that time, Plaintiff reported a three-year history of neck pain which had recently gotten worse. She said her doctor had diagnosed her with arthritis. Her current symptoms were described as "mild." She exhibited pain on passive movement of the neck. She was given medication and discharged with instructions to follow up with her physician. (Tr. 191-95).

Next, there are a number of pages of notes from Plaintiff's family doctor, Dr. Timson, all from 2010. They show that Plaintiff was being treated for numerous problems including spinal stenosis in the cervical region (apparently diagnosed by MRI), osteopenia, arthralgia at multiple sites, depressive disorder, and fatigue and malaise. She had been prescribed several medications. There were few abnormal test results shown - for example, an EMG done in May, 2010 was normal, as was a bone scan done the following month. Plaintiff reported in October, 2010 that she had arm pain and could not tolerate the typing involved in the BVR retraining effort. She also demonstrated pain on almost any touching and had decreased flexion in the head and neck. (Tr. 196-237).

Dr. Grodner performed a consultative examination on October 20, 2011. Plaintiff reported morning stiffness in all her joints and difficulty walking, climbing stairs, and getting in and out of a car. She was not taking any medications at that time. She walked slowly and deliberately but did not need an ambulatory aid. She could squat only partially. Her grasp and manipulation were normal. She showed a decreased range of motion in the cervical spine, right knee, and shoulders. X-rays were normal. Dr. Grodner reviewed the prior MRI which showed some mild degenerative changes in the cervical spine. Taking into account

his examination, the test results, and the history provided by Plaintiff, Dr. Grodner concluded that Plaintiff could do some type of sedentary work which did not involve use of the head and shoulders in a repetitive way. (Tr. 237-44).

Plaintiff was seen by a rheumatologist, Dr. Stainbrook, on October 26, 2012. Her reporting problem was joint pain from head to toe. She complained of fatigue and weakness as well as morning stiffness and swelling in her fingers. Dr. Stainbrook's impressions included arthralgia of multiple joints, fibromyalgia, and fibrositis, plus severe arthralgia of the shoulder, elbow, and wrist. He told Plaintiff that the "cornerstone" of treatment was physical therapy, generalized stretching, and aerobic exercise. He also thought she would benefit from chronic pain management and psychiatric evaluation and treatment. (Tr. 245-51).

The last set of records are additional notes from Dr. Timson. They show little beyond the fact that her primary complaint was arthritis and that she was not taking medications because she could not afford them. (Tr. 252-66).

Finally, the record contains opinions from two state agency reviewers. Dr. Hinzman, who reviewed various records including Dr. Grodner's assessment, limited Plaintiff to the performance of light work with limitations on the use of both upper extremities for operation of hand controls and overhead lifting. He also thought she could never climb ladders, ropes, or scaffolds, could frequently stoop and occasionally crawl, and should not be exposed at all to fumes, odors, dusts, gases, poor ventilation, unprotected heights and moving machinery. (Tr. 50-55). It is unclear exactly how the other reviewer, Dr. Klyop, evaluated Plaintiff's residual functional capacity other than concluding that she could do light work.

IV. <u>The Vocational Testimony</u>

George Coleman III was the vocational expert in this case. His testimony can be found at pages 42-47 of the administrative record.

Mr. Coleman was asked to categorize Plaintiff's past work. He said that her job as an administrative secretary or office clerk was light and semiskilled. Her job as a warehouse worker was medium and unskilled. The cleaner job was light and unskilled.

Mr. Coleman was then asked some questions about a hypothetical person of Plaintiff's age, education, and work experience who could work at the light exertional level but who could occasionally climb ramps and stairs and never climb ropes, ladders and scaffolds. The person could also occasionally crawl. Finally, the person could not be exposed to moving machinery, unprotected heights, or dust, fumes, and gases. According to Mr. Coleman, someone with those limitations could do some of Plaintiff's past jobs, and could also work as a file clerk, office helper, or parking lot attendant.

Mr. Coleman was then asked about an individual with the same restrictions but who could not perform repetitive arm motions, could not have a production pace requirement, and who needed to change positions frequently with a five-minute break each hour. That last requirement, he said, would define an accommodated work setting and would be inconsistent with competitive employment.

### V. The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 13-22 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured requirements of the Social Security Act through September 30, 2012. Next, he found that she had not engaged in substantial gainful activity since her alleged onset date of June

22, 2010.  Going to the second step of the sequential evaluation process, the ALJ determined that Plaintiff had severe impairments which he described as "back and neck."  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to step four of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform a full range of light work.  Based on that conclusion, the ALJ determined that Plaintiff could do her past relevant work as a retail sales clerk and administrative secretary.  Consequently, the ALJ concluded that Plaintiff was not entitled to benefits.

VI.  <u>Plaintiff's Statement of Specific Errors</u>

In her statement of specific errors, Plaintiff raises these issues: (1) the ALJ erred by failing to discuss or weigh the state agency physician's medical opinion; (2) the ALJ incorrectly evaluated the opinion of Dr. Grodner; and (3) the ALJ erred by not finding that Plaintiff had a severe impairment concerning the use of her arms and hands. These claims are evaluated under the following standard.

<u>Standard of Review.</u>  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" <u>Id</u>.  <u>LeMaster v. Weinberger</u>, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  <u>Harris v. Heckler</u>, 756 F.2d 431, 435

(6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

### A.  Dr. Hinzman's Opinion

Plaintiff's first claim of error is straightforward.  She notes, correctly, that the ALJ found her to be more capable than reflected in Dr. Hinzman's opinion, notwithstanding the fact that the ALJ specifically adopted that opinion, see Tr. 20 ("[t]he limitations assessed adopt the opinions of the State of Ohio Bureau of Disability Determinations physicians,") and Tr. 21 ("[t]heir assessments are ... accurate representations of the claimant's physical ... status").  Consequently, she argues that the ALJ did not properly consider the opinions of the state agency reviewers as required by SSR 96-7p.  The Commissioner responds that most of the limitations described by Dr. Hinzman were presented to the vocational expert, who testified that even with those limitations Plaintiff could do her past relevant work, and asserts that the ALJ had a substantial basis - primarily Dr. Grodner's opinion - for finding that the remainder of those limitations were not supported by the record.

There is no doubt that the administrative decision could have been written more clearly to reflect the fact that, despite

lumping all of the opinions of the state agency reviewers together and purporting to adopt them as accurate, the ALJ made a residual functional capacity finding which differed from that of Dr. Hinzman.  It also appears that Dr. Hinzman is the only state agency reviewer who expressed an opinion about Plaintiff's residual functional capacity.  Nevertheless, contradictions or inconsistencies in an ALJ's opinion do not necessarily require a remand.  The Court still must review the ALJ's conclusions under the "substantial evidence" standard and cannot remand a case if any error in procedure is harmless - that is, if it is clear that the ALJ would have still reached the same result despite the error.

Here, that is not clear.  There is precedent for determining that inconsistencies between an ALJ's purported adoption of physical limitations described in a physician's opinion and the ALJ's RFC finding is an error requiring remand.  See, e.g., Glenn v. Comm'r of Social Security, 763 F.3d 494, 497 (6th Cir. 2014)(awarding fees under the EAJA and approving the District Court's finding of reversible error because the ALJ adopted "a residual functional capacity (RFC) finding inconsistent with the opinion of examining, non-treating physician Dr. Shelby-Lane, which the ALJ expressly stated he adopted ..."). And, as cogently stated in Commodore v. Astrue, 2011 WL 4856162, *4 (E.D. Ky. Oct. 13, 2011),

> The Court recognizes that the ALJ is ultimately responsible for assessing a Plaintiff's RFC. 20 C.F.R. § 404.1546(c).  However, he must base his assessment on "all of the relevant evidence in the case record."  SSR 96-8p; see SSR 96-6p. Additionally, "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion." SSR 96-8p.  The ALJ must articulate the reasons for his findings, particularly when they deviate from the sources he purports to rely on.  In the context of purely conclusory statements, this Court cannot conduct a meaningful review of whether substantial evidence

supports the ALJ's decision.

This Court has generally followed that reasoning. See, e.g., Holsinger v. Comm'r of Social Security, 2013 WL 3762274 (S.D. Ohio July 16, 2013), adopted and affirmed 2013 WL 4047142 (S.D. Ohio Aug. 9, 2013); see also Tucker v. Astrue, 2012 WL 3561987 (S.D. Ohio Aug. 17, 2012), adopted and affirmed 2012 WL 4006705. *9 (S.D.Ohio Sept. 12, 2012)(holding that "the ALJ's decision must provide some explanation of how the record evidence supports her RFC determination").

The Commissioner's memorandum provides a good deal of speculation as to what the ALJ's reasoning might have been, and what the vocational expert might have said had the entire set of limitations described by Dr. Hinzman been included in the hypothetical question posed to him, but it is just that - speculation.  As but one example, the Commissioner's claim that the ALJ may have relied on Dr. Grodner's opinion to discount some of Dr. Hinzman's stated limitations is hard to reconcile with the ALJ's decision to give Dr. Grodner's opinion only partial weight, without any discussion of what parts of that opinion the ALJ actually accepted.  Further, the record is insufficient to support the Commissioner's assertion that limitations on the use of the hands or arms, or on overhead reaching, are consistent with doing the job of either office clerk or administrative secretary.  The vocational expert was not asked that question, and Plaintiff was not asked to describe the duties of those jobs in sufficient detail to permit any conclusion about that matter to be drawn from the record.

On the current state of the record, the Court cannot determine if the ALJ actually reviewed Dr. Hinzman's opinion as required by law, or whether he mistakenly believed that Dr. Hinzman expressed an RFC for a full range of light work.  He also provided an insufficient explanation for his RFC findings.  These

errors require remand.

### B. Dr. Grodner's Opinion

Plaintiff next argues that the ALJ did not apply the proper factors in discounting Dr. Grodner's opinion. The ALJ provided a short rationale for disregarding the limitation to sedentary work, asserting that Dr. Grodner had relied upon Plaintiff's description of her limitations, which the ALJ did not find totally credible, and that his conclusion was not supported by the radiologic evidence. According to Plaintiff, this was error because Dr. Grodner actually examined Plaintiff and made a number of direct observations to support his findings, and because the radiologic evidence was not a substantial basis for Dr. Grodner's conclusions. In response, the Commissioner argues that the ALJ had an adequate basis for discounting Dr. Grodner's conclusions and that he was not required to give that opinion any special consideration.

Plaintiff is correct that the opinion of an examining but non-treating source is generally entitled to greater weight than that of a non-examining reviewer. "Generally, more weight is given to the medical 'opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant].' 20 C.F.R. §404.1527(c)(1)...." Brooks v. Comm'r of Social Security, 531 Fed. Appx. 636, 642 (6th Cir. Aug. 6, 2013). While an ALJ may certainly reverse that calculus for good reasons, his decision to do so must find substantial support in the record. Here, Plaintiff has not challenged the ALJ's credibility finding, so to the extent that Dr. Grodner relied on her statement of symptoms, that is a good reason for giving less weight to his opinion. He did also rely in part on x-rays and similar studies, and they did contain only minimal findings. However, he also based his opinion, particularly about the amount of lifting Plaintiff could do, on findings such as decreased range of motion of the cervical spine, tenderness and increased

-10-

tonicity in the posterior cervical muscles, and decreased range of motion of the shoulders. Those findings may well support his conclusion that Plaintiff had difficulty moving her head frequently, and the ALJ's two rationales for discounting Dr. Grodner's opinion do not address them at all. On remand, the ALJ will have a further opportunity to discuss the extent to which Dr. Grodner's opinion is also supported by his examination findings - something not present in the current decision, and something the ALJ has an obligation to consider. See 20 C.F.R. §405.370 ("The administrative law judge will make a decision based on all the evidence...").

### C. Upper Extremity Impairment

In light of the prior discussion, any issue about whether the ALJ properly determined that Plaintiff did not have a severe impairment of her upper extremities is moot.

## VII. Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be sustained to the extent that the case be remanded to the Commissioner pursuant to 42 U.S.C. §405(g), sentence four.

## VIII. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

-11-

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

<u>/s/ Terence P. Kemp</u><br>
United States Magistrate Judge